Good morning, ladies and gentlemen. We actually originally had five cases on the docket, two of which are submitted on the papers. There were six cases and one of which has gone away, so we only have three argued cases today. That doesn't mean you're going to get all kinds of extra time, it just means that we're not in a rush. The first case before the court is Communications Test Design, Inc. v. Contec, LLC. That is case number 191672, an appeal from a decision of the District Court in the Eastern District of Pennsylvania. Mr. Miller, you want five minutes for rebuttal? Yes, Your Honor. Okay, you may proceed. May it please the Court. This case raises the issue of when a District Court can properly decline to exercise, or properly exercise its discretion to decline to hear an otherwise proper first file declaratory judgment case. In this case, our view, Your Honors, is that the District Court's decision to do so was not proper. Based on the portions of the record that the District Court relied on and the logic that the District Court used in rendering its decision, if its decision is affirmed, we believe that this will create a rule or at least the... In the blue brief at 18, you make the argument that the District Court made a finding that CTDI acted with a nefarious motive. And you cite to the Court's decision at the appendix at 10 as support. But when I turn to the appendix at 10, nefarious motive is a quote from Sony Electronics v. Guardian Media Techs, right? Isn't the District Court setting out a standard in using that quote? It seems to me that all the District Court is stating is that Sony thus characterized certain conduct. I think what the Court is doing is attributing nefarious motive, as was discussed in the Sony case, to CTDI's behavior. Well, I'm going to disagree with you because I think what they're saying is here's this nefarious motive standard, and then what you did to your client fits within it. But I hesitate. I'm not comfortable with saying there was a finding of nefarious motive as opposed to you're within the legal standard. You see what I'm saying? In fact, Your Honor, I think what I would say is that the Court is making an inference that, in fact, my client had a nefarious motive. An improper ulterior motive. Exactly. A motive to undermine. I would say that. I think that's probably the most fair characterization. Even if you debate that or even if finding motive, because there's aspects of intent, would generally require some kind of a hearing, is it really important to the Court's decision? I mean, the Court based its conclusion on about three or four factors. And I sort of read it as an offhand comment rather than a finding. But even if it was a finding, would it matter? Well, I think it would, Your Honor, for a couple of reasons. First of all, if we whittle it down to there are essentially three separate findings, I think that the District Court adds up to its ultimate decision to dismiss the case. The first is that it finds the suit to have been anticipatory. The second is that it finds that there was a nefarious motive to interfere with negotiations, which goes to the decision in the EMC case. Objectively, putting aside motive, there was an interference with negotiations, right? You could make an objective finding that it interrupted the flow of negotiations, it interrupted an agreed time for purposes of a negotiation. So it doesn't matter whether that motive was nefarious or not. There was still an interruption of negotiations, which is an independent factor that the Court can consider, right? Well, I think it does matter what the motive is under the Sony case, Your Honor, because in the Sony case, we know that, in fact, there were a series of actions that were done that, in fact, that did interfere with negotiations and did, in fact, change the leverage position. But the Sony court said just because a D.J. action changes the leverage position between the parties, that is not a sufficient reason to decline jurisdiction. So I do believe it is relevant that motive was assigned in that instance. Well, you do have a bit of an uphill battle here. You've got a double dose of deference that you have to overcome, because the first to file rule is itself equitable, and it's entirely within the Court's discretion to decide as it deems fit, as long as it doesn't completely abuse its discretion. And then you've got the fact that we've got a declaratory judgment action that the Court can just say, I decline to exercise jurisdiction over this particular case. And that's a uniquely deferential standard. We appreciate the standard, Your Honor. I think that, nevertheless, it still adds up to – I think if you can take the three independent points that the district court made, I think that, in fact, you can whittle them away and find out that, in fact, none of them support the decision. Supposing the Court's finding on an improper motive – I'd rather characterize it that way – is supported by the underlying – is a factual determination. How is the underlying factual posture of the undisputed facts in the record,  I believe, Your Honor, that the underlying facts – so we're talking about the undisputed facts, and so it seems to me that the undisputed facts reflect only – The undisputed facts reflect that your client is saying, hey, let's keep talking. At the same time, they're filing a suit. And I would say, Your Honor, that there's nothing wrong with that. There's no reason that just because parties are negotiating declaratory judgment actions should not be filed. The plaintiff could have filed an affirmative suit at that time. I don't think there's any dispute about that. Why is it – could have. Could have. Didn't. But also didn't say, we won't. You don't dispute that it was anticipatory by definition, right? We do, in fact, dispute that it was anticipatory, Your Honor. Well, you didn't dispute that to your reply brief. That's right, Your Honor. That is fair. Okay. And, I mean, it's kind of hard to dispute that it was anticipatory. They say, we're going to file a lawsuit. They show you a sample complaint. And you say, let's wait until Monday and we'll talk, and then on Thursday or Friday you file a lawsuit. How is that not anticipatory? Well, as I understand this Court's prior anticipatory cases, they involve a situation where the patent owner has made some kind of agreement, we will not sue, or unless you talk to us by this date, we will not sue, or we will sue on this date, and the filing comes sometime prior to that date. That is what happened in Serco. That is – that also happened in one of the other cases, which escapes me as I stand here. But there is some kind of date certain by which the plaintiff has made very clear that they are waiting to file suit. Our view, Your Honor, of this record is that the only date certain in this case was September 19th, by which the plaintiff had given a deadline – or patent owner, excuse me – had given a deadline by which to affirm that we were interested in still negotiating. And, in fact, we did affirm on that day. The suit was filed after that, Your Honor. So, in fact, the parties were – affirmed your interest in negotiation and said, please wait until the 24th so we can have a conversation on the 24th, and then the other side said, okay, I'll wait until the 24th. I don't believe the record supports that, Your Honor. I don't think the record says, please wait until – Maybe it didn't use the word please. But it proposed – you proposed the 24th. I think, actually, Contact proposed the 24th, and we accepted that date to talk, yes, Your Honor. But I don't believe anyone said at all, at least on the undisputed record, that we won't file suit until that time. Okay. What about the fact that the court made some findings about witnesses and documents and convenience for purposes of adjudication? You know, it's not the same standard that you would be – to transfer for purposes of convenience of witnesses, et cetera. This is simply, is it a more convenient rather than a less convenient forum? And there's no obligation on the court at this point to honor the chosen forum of the plaintiff. But we do believe, Your Honor, that the court gave too much weight to the patent owner's choice of forum and the convenience of the patent owner over – But the court made factual determinations about location of witnesses, about your client having a company up there and a place to do – you know, to work out of and so on. It made those factual findings. You don't dispute them, do you? Don't dispute the findings, Your Honor, but do dispute the conclusion that they – that they demonstrate that the Northern District of New York is, in fact, a more convenient forum overall. Well, one of the co-inventors works for you up there in the Northern District of New York, right? That's right. And I would say a couple of things about that. First of all, the relevance of inventor testimony I think generally is being massively overweighted by the court. But I also acknowledge that that is what the court had before it to decide on, was where do the named inventors live at that time. So you've been sitting in the Northern District of New York, all of you collectively, for a year and a half or a year and a couple months. We looked at the docket. You've got a settlement conference, what, next week or something, right? We're having a mediation, yes, Your Honor. I guess settlement conference is the right way to put it. We're having it hosted by the magistrate judge, yes, Your Honor. So, I mean, you're moving forward. Negotiations are still continuing. Why is this such a big deal? Why can't you just go forward where you've been for the last year and plus months? Well, a couple of reasons, Your Honor. First of all, we do believe that the district court decision below was not correct, and so we think that that should be addressed. Second of all, there is a motion for sanctions pending that I think the outcome of this appeal may impact. That's going to be relevant to us. Motion for sanctions against you? Yes, that's correct, in the Eastern District of Pennsylvania. Because of the nefarious motive comment? That is it. Well, I mean, because of the result of the case. Okay, I get it. Okay, you want to save the rest of your time for rebuttal? Yes, Your Honor. Okay. Thank you. Okay, so why isn't it a problem that the court used the nefarious motive language and that if you're going to determine motive, you generally need to have a hearing and consider live witnesses? Yes, Your Honor. And I'll throw into that. I noticed you characterized what the district court did as a determination, which implies to me something other than a finding of fact. Why isn't it also a finding of fact? Well, and I think, Judge Wallach, when you were pointing to the decision and the nefarious motive reference is in quotes, and it's clear that the court was quoting this court's decision in Sony. And what the court is doing here is giving its conclusion up front. It's sort of setting the stage, here's what I found, and then proceeds to go through its analysis of reaching that conclusion. So I think it is more of a conclusion, a determination of the circumstances. But it fits within Sony. I mean, that was my read. Right. So in Sony, this court said on that record, there were insufficient facts to infer a nefarious motive. And so what the court's doing here is distinguishing that. He's saying on this record, however, there are undisputed facts that support that conclusion and goes through in detail talking about the objective conduct of CTDI in context. But isn't there a big distinction between behaving in a way that, as a matter of fact, does disrupt negotiations and having a nefarious motive for the purpose of disrupting negotiations or being mean to your opponent? I mean, that's a big difference, right? There is a difference. Yes, but here I think what the court is trying to do is look and see do the circumstances fit the proper use of the Declaratory Judgment Act. And I think perhaps the true intent of the party could be irrelevant. It's really does the conduct, does the circumstances, do those fit to where the DJ Act is used as it should be as a remedy? Is the alleged infringer in this position where it's helpless and immobile? When you say that, you're not saying that the true intent was not, I'm making air quotes, nefarious. That was a double negative. True, true. I mean, in the briefing, we do take the position that CTDI acted in bad faith, that it had bad faith intent. I don't think that if there's a factual finding of that, I don't think that's necessary to the decision. I mean, if every time you race to the courthouse it's a nefarious motive, then there's an awful lot of parties and lawyers that are in trouble because it happens all the time. But it doesn't happen all the time when you're negotiating. This is a very unique circumstance where contact stated unexplicitly it was willing to file suit. So if CTDI needed a judicial resolution, contact was willing to provide it. And instead, CTDI lured contact into deferring that filing. The cases that the district court relies on that are cited in EMC have similar facts where the party lodges a settlement proposal and then files suit. And that's not a proper use. It discourages the public policy of pursuing extrajudicial. Well, your proposal for suit was to file in California. I mean, I can understand that. Maybe if he thought it was going to be New York, he might not be as shocked by that. But to be dragged all the way out to California, that might have prompted. It might have been the fact that you proposed a California lawsuit that actually prompted this filing. So a couple things on that, Your Honor. One, there's no evidence that that did motivate CTDI. In fact, that complaint is not in the record. The district court did not see it, did not rely on it. CTDI never put that in the record and never made that argument. And in Mr. Parson's declaration, he never says that part of the motivation for filing suit was not to be in California. And Contact had good reasons to draft it that way. At that time, when we sent the letter, when Contact sent the letter threatening suit, it was considering the possibility of filing there because Contact's CEO at that time, now former CEO and VP of Engineering, that's where their office and their facility, it's the current research and development arm of the company, that's where they're located. And CTDI has a facility there in that district that Contact believes is using the accused systems. So it was another district where both parties had contacts. By the time Contact filed his suit, it came to the judgment that filing in New York was the more appropriate forum and it filed there. But even if the district court had considered that, I think that there's still overwhelming evidence to support the conclusion that he did. And what about the fact of the witnesses? I mean, the CTDI does have a facility up there, but it's not their primary place of business, right? It's not their primary place of business, but it's not like just one of all the rest of their facilities. It is unique. So there's evidence in the record that this is a regional distribution center for the entire northeast of the United States. It was developed using local grants. They get state tax credits, employs over 350 people, 15,000 devices are processed there every day. So there is a large presence in Albany, right near the courthouse. So the fact that Contact has such, it's based there, it has enormous contacts there in that district, and it would not be unfair, CTDI has contacts in that district, it would not be inconvenient for them to litigate there. And you have an adventurer there, as I understand the record. Both employees that are currently employees of the companies are located in the New York district in Albany, one for CTDI and one for Contact. There's a former employee inventor who's still in Albany, and then the rest are outside. The motion for sanctions seems to be a bit of an overkill here. I mean, I obviously can't rule on the motions for sanctions, but I'm trying to understand why that snappy of a number, when you had the burden to overcome the first to file rule, makes any sense. It's amply supported by the case law. We found numerous cases where when there's an anticipatory filing, and I think the conclusion is that there was a nefarious motive there, the sanctions can be appropriate. I mean, so Contact, one, it slowed down the New York case for a year. So to the extent CTDI wanted judicial resolution, it caused this delay in the procedure in the New York case. But it caused motion practice in both courts, just a lot more work, a lot more attorney's fees than should have been necessary. After Contact said, if you want a lawsuit, we'll file one. Okay. Anything else? Anything else, Bob? No. Okay. Thank you. Your Honors, just a few brief points. You know, I think just to further address the location. Sorry, go ahead. No, no, I'm listening. Oh, okay. To further address the location, I think the issue is, as we know from Genentech, that it's usually the bulk of the discovery, the bulk of the work on that side in a patent case, and certainly in this one where the assertions are only going one way, come from the accused infringer. And that's going to come from CTDI's headquarters, and that's in the Eastern District of Pennsylvania. That's where the systems were designed. That's where all the lead engineers who know how all these things really work and how they function are located. I think to give so much weight both to inventors. But, again, our standard of review, it's not like the court didn't have a factual basis for making the determination. You have to agree with that. I agree that the court had facts on both sides. They made a determination, and I am aware of the standard. I recognize that it's troublesome for us in this situation. But I think that in this case, if you look at it, I think it grossly overweights the convenience to a party who's probably not going to be producing that much information in this case and is really going to be on our side of the table. Are you saying that that facility up there doesn't present an opportunity for you to produce documents or, I mean, obviously the volume of your production at that facility is going to be entirely relevant? Well, I think that the volume of our production, if we get that far in this case, with respect to all of our facilities all over the world, the notions of the size of that facility, I mean, it's an okay-sized facility, but we have many more, and that's just kind of another place. Maybe you can settle on Paris, France. It would be warmer, I hope. But in any event, I think that that's the point that I want to make there. Mr. Nixon makes the point that by filing the degeneration, we slowed down the New York case for years, the competing motions. Well, at the same time, contact has been arguing, well, we could have just allowed CT contact to file its suit wherever it wanted and proceed their way. Well, they could have done that too. They could have let this suit proceed in the Eastern District of Pennsylvania. No one's contending that it's not a proper jurisdiction to have this suit proceed. They just wanted to do it in their home court, and frankly, so did we. And I think that's not an improper motive for choosing a place. Nobody's choosing a forum that is known to be more friendly to one type of party or another. There's a sound reason for choosing that, for choosing the forum. And it's where our home base is, and I actually think the Genentech case talks about that and notes that it's not forum shopping when you have a logical reason to choose the place that you filed the suit. In fact, I do want to make one point, Your Honors, and I think there's sort of a common thread underlying this court's cases that have affirmed decisions to decline to otherwise keep a case that's proper, and those are the EMC and the CERCO case, is that in both of those cases there was a something more. The parties were in some kind of negotiation. They were in some sort of discussion back and forth, but there was a something more. There was in both of those cases an express statement of the purpose of filing the declaratory judgment action. So in both CERCO and EMC, the DJ plaintiff said, and it is in the record, we filed this for defensive purposes. We filed this to protect our rights. Now let's keep talking. And this case doesn't have an analog to that, Your Honors, in the record. And I think that's an important point and something worth considering as you render your decision with respect to this. All right, thank you. Thank you, Your Honor.